762 F.2d 1014
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HENRY C. YOUNG, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-5355
 United States Court of Appeals, Sixth Circuit.
 3/22/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY
 Before: CONTIE and WELLFORD, Circuit Judges; and, PHILLIPS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Henry Young appeals from an order affirming the denial of his claim for supplemental security income benefits under Title XVI of the Social Security Act. Young is forty-eight years old; received an eighth or ninth grade education, and gained some training as an industrial electrician. After serving in the Army, his primary job experience was a fifteen (15) year stint as an assembly line employee at a Chrysler Corporation plant. He has been self-employed as an installer of aluminum siding for about five years. Young alleges, however, that he became unable to continue his business or work after August 1978. Young has apparently experienced problems from heavy drinking in the past but stated that he no longer drinks at the time of his hearing before the ALJ. He has smoked continuously for many years one cigarette pack per day.
 
 
 2
 On November 1, 1979, Young filed an application for supplemental security income benefits, alleging disability due to a severe respiratory/pulmonary problem accompanied by a bad nervous condition and stomach pain. The Social Security Administration rejected Young's claim and an Administrative Law Judge (ALJ) agreed with the administrative denial after a requested hearing. The federal district court granted summary judgment on Young's request for judicial review prior to this timely appeal.
 
 
 3
 Young dates his medical problems back to 1969 when he experienced the onset of lung problems, a feverish condition, and general weakness. In 1973 Young had an operation that removed part of one lung. Within the next year Young was admitted into a Veterans Administration Hospital due to his nervous condition. These allegedly worsening conditions subsequently led him to discontinue his aluminum siding business in 1978. The Veterans Administration nevertheless has refused to categorize Young as disabled, after focusing exclusively on Young's respiratory/pulmonary problems during 1978-1979. As the ALJ pointed out, the VA medical notes are 'partially illegible' and carry no clear or significant diagnosis of Young's condition signed by a competent expert. The record, however, includes an independent diagnosis of Young's respiratory/pulmonary problems written in January 1978 by Dr. Bruce Broudy, a certified medical internist:
 
 
 4
 This patient has a history of bronchiectasis with a history of previous thoracotomy for [sic] bronchiectasis. He has a history of chronic sputum production. The spirogram is normal and shows no restriction of the patient's ventilatory capacity or any airway obstruction. I can find no medically determinable impairment of the respiratory system at this time. The patient also has hypertension which has not been previously documented. Further follow-up of his blood pressure is definitely indicated.
 
 
 5
 (emphasis added.)
 
 
 6
 Young relies heavily on the psychological diagnoses in the record provided by psychiatrists George Gee (also a board-certified neurologist), Robert J. Dane, and a psychologist, Charles Dowdy. Dr. Gee and his psychologist associate, Dowdy, agree that Young suffers (in Gee's words) from 'a chronic psychoneurotic reaction apparently aggravated by the involutional period.[1] ' Dr. Gee also stated his belief that Young is not so mentally disordered as to be considered 'psychotic.'
 
 
 7
 Dr. Dane is Staff Psychiatrist at Cumberland River Comprehensive Care Center, which had records dealing with Young's nervousness and anxiety condition since 1969 or 1971. Treatment of his problem with certain drugs brought about 'a favorable response.' In the 1979 examination, Dr. Dane found Young 'to be subject to some depression . . . non-psychotic . . . [with] a fair amount of anxiety,' but he was 'not convinced that he [Young] is totally and permanently disabled.' It should be noted that Young during this time of treatment at the Care Center worked at a trade and was also receiving vocational training at the Veterans Administration. Dr. Dane acknowledged that 'from time to time' Young experienced 'substantial difficulty in maintaining gainful employment.'
 
 
 8
 Dr. Gee agreed with Dr. Dane that Young was not psychotic, and noted that he, in September of 1980, was 'not taking any nerve medication.' Dr. Gee described Young as 'somewhat hypochondriacal;' that 'functional impairment is moderate to moderately severe,' and recommended outpatient psychiatric treatment. He had questions (as did psychologist Dowdy[2]) as to 'whether he could perform an eight-hour work day on a sustained basis,' but was of the view that 'there would be no problem with the quality of such work.'
 
 
 9
 The ALJ concluded that Young's physical ailments were not severe, and there is ample evidence to support this conclusion. The anxiety neurosis, however, is a more difficult problem. The ALJ found the 'mental impairment . . . not severe,' thus, his 'ability to perform basic work-related functions' was not severely limited. Although the psychiatric and psychological evidence is not clear and unambiguous, we are not persuaded that plaintiff has established his claimed disability under all the circumstances set out. There is substantial evidence to support the ALJ's finding that 'no continuous impairment is shown to have existed for twelve months nor is a projected twelve-month continuous period likely.' Appellant has therefore failed to make out his case at the time in question of showing that his impairment is so severe that he is prevented from returning to 'substantial gainful activity' within the meaning of the applicable law and regulations.
 
 
 10
 Accordingly, we affirm the decision of the Secretary.
 
 
 
 [1]
 Young cites authority defining the 'involutional period': as the period of regression gradually suffered after the prime of life. See Appellant's Brief at 8, citing 2 J. Schmidt, Attorney's Dictionary of Medicine I-91 (1983)
 
 
 [2]
 Dowdy found Young not handicapped intellectually, but 'emotionally inadequate;' he felt he would be 'sporadic' in work habits, and 'might not be able to persist through a normal eight-hour work day.' He recommended that he should 'receive appropriate medications for nervous complaints.'